IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 06-cv-01013-WYD

C. ELI-JAH HAKEEM MUHAMMAD, a.k.a. CHRISTOPHER MITCHELL,

    Applicant,

v.

R. WILEY, ADX Warden,

    Respondent.

## ORDER OF DISMISSAL

I.  Background

    Applicant C. Eli-jah Hakeem Muhammad, a.k.a. Christopher Mitchell, is in the custody of the United States Bureau of Prisons (BOP) at ADX Florence.  Applicant initiated this action on May 26, 2006, by filing a *pro se* Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 challenging a prison disciplinary conviction in Incident Report (IR) No. 1178680.  After two attempts by Applicant to amend the Application and write his claims legibly, Applicant filed a legible Second Amended Application on August 17, 2006.  Upon review of both the original Application and the Second Amended Application and finding good cause, I directed Respondent to answer and show cause why the Applications should not be granted.  On September 21, 2006, Respondent filed an Answer.

    Applicant raises six claims in the Second Amended Application.  In all of the claims, he alleges that his due process rights were violated because prison officials

failed to follow the guidelines set forth in either the BOP Program Statements or in the Code of Federal Regulations (CFR's) in his disciplinary proceeding in IR No. 1178680 and in his placement in a Special Housing Unit (SHU) prior to his disciplinary hearing. Applicant also asserts other specific claims as follows: (1) In Claim Two, Applicant claims that his due process rights were violated when he was held indefinitely in the SHU prior to his disciplinary hearing; (2) in Claim Three, Applicant asserts that he was denied due process when the Unit Disciplinary Committee (UDC) waived his rights to be heard, without his consent, before his case was referred to the Discipline Hearing Officer (DHO); (3) in Claim Four, Applicant asserts that his due process rights were violated because he was denied a fair chance to prevail at the disciplinary hearing; (4) in Claim Five, Applicant asserts that the DHO's decision was arbitrary, without factual support, and failed to meet the "some evidence" standard. Applicant further asserts in Claim Five that he was denied the ability to call witnesses and present documentary evidence in his defense; and (5) in Claim Six, Applicant asserts that he has a protected liberty interest in his accrued good-time credits. As relief he seeks expungement of the incident from his disciplinary record.

II. Analysis

I must construe the Second Amended Application and the original Application liberally because Applicant is a **pro se** litigant. **See Haines v. Kerner**, 404 U.S. 519, 520-21 (1972); **Hall v. Bellmon**, 935 F.2d 1106, 1110 (10th Cir. 1991). If an application reasonably can be read "to state a valid claim on which the plaintiff could prevail, [a court] should do so despite the [applicant's] failure to cite proper legal authority, his

confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall*, 935 F.2d at 1110. However, I should not act as a *pro se* litigant's advocate. See id.

A.  Exhaustion/Timeliness

Upon review of the attachments to the May 26, 2008, original Application, I find, contrary to Respondent, that Applicant did exhaust his administrative remedies on October 15, 2004, with respect to the claims he raises in the instant action. (May 26, 2006, Application, Attachs. at Ex. 24.)

Respondent also, relying on *Dulworth v. Evans*, 442 F.3d 1265, 1268 (10th Cir. 2006), asserts that an inmate should proceed within one year of exhausting administrative remedies. *Dulworth* involved the failure by a state prisoner to challenge an administrative decision in a habeas action within a year after he had exhausted administrative remedies. The court in *Dulworth* relied on 28 U.S.C. § 2244(d)(1). Section 2244(d) applies to those in custody pursuant to the judgment of a State court. *See* § 2244(d)(1). Respondent makes a valid argument that is in keeping with Congress's intent in enacting the Antiterrorism and Effective Death Penalty Act, which is to curb the extended nature of habeas proceedings. Here, the decision rejecting Applicant's administrative appeal was final on October 15, 2004, when the National Inmate Appeals Administrator denied his appeal. Applicant did not submit the instant action to this Court until May 11, 2006, the date he attests that he gave the original Application to prison staff for filing with this Court. *Houston v. Lack*, 487 U.S. 266, 270 (1988); *see also Price v. Philpot*, 420 F.3d 1158 (10th Cir. 2005) (prisoner must attest

that a timely filing was made and has the burden of proof on the issue). This action was filed almost two years after Applicant's administrative appeal was denied by the National Inmate Appeals Administrator. Applicant fails to assert any basis for equitable tolling of the one-year time limitation in response to Respondent's finding that he should have filed the instant action within one year of exhausting his administrative remedies. I agree that Applicant's claims should be barred by the one-year time limitation. Nonetheless, even if the action were found to be timely, the original Application and the Second Amended Application lack merit as determined below.

   B. Merits

As a federal prisoner, Applicant has a constitutionally protected liberty interest in his earned good-conduct time. **See Brown v. Smith**, 828 F.2d 1493, 1494 (10th Cir. 1987). Therefore, he was entitled to due process at the disciplinary hearing in question. However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." **Wolff v. McDonnell**, 418 U.S. 539, 556 (1974). Instead, adequate due process at a prison disciplinary hearing requires only that a prisoner be provided with written notice of the charges against him no less than twenty-four hours in advance of the disciplinary hearing, an opportunity to call witnesses and present documentary evidence in his defense if doing so would not be unduly hazardous to institutional safety or correctional goals, and a written statement by the factfinders of the reasons for the decision and the evidence on which they relied. **See id**. at 563-66; **Smith v. Maschner**, 899 F.2d 940, 946 (10th Cir. 1990). There also must be some evidence to support a disciplinary

conviction.  ***Superintendent, Mass. Correctional Inst., Walpole v. Hill***, 472 U.S. 445, 454 (1985); ***Mitchell v. Maynard***, 80 F.3d 1433, 1445 (10th Cir. 1996).

"Ascertaining whether [the some evidence] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  ***Hill***, 472 U.S. at 455-56; ***see Mitchell***, 80 F.3d at 1445.  The disciplinary decision will be upheld even if the evidence supporting the decision is "meager."  ***Mitchell***, 80 F.3d at 1445 (citing ***Hill***, 472 U.S. at 457).

Constitutionally adequate due process at a prison disciplinary hearing does not require that Applicant be informed of every detail of the charges against him so that he can prepare what in his opinion is the best defense.  It only requires that he be informed of the charges to enable him to marshal the facts and prepare a defense.  ***Wolff***, 418 U.S. at 564.

To the extent that Applicant claims a denial of due process simply because BOP staff may have failed to follow BOP Program Statements or CFR's, in ***Hovater v. Robinson****,* 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) (citing ***Davis v. Scherer****,* 468 U.S. 183, 194 (1984)), the Tenth Circuit stated that "a failure to adhere to administrative regulations does not equate to a constitutional violation."  A review of an applicant's disciplinary proceeding is "limited to whether the three steps mandated by ***Wolff*** were followed and whether there was some evidence to support the disciplinary committee's findings."  ***Mitchell***, 80 F.3d at 1445; ***e.g.***, ***Diaz v. McGuire****,* No. 05-3149, 154 Fed.

Appx. 81, 84-85 (10th Cir.(Kan.) Nov. 14, 2005) (stating that prison regulations are not designed to confer rights on inmates, and the process which is due is measured by the due process clause) (unpublished op.), **cert. denied**, 546 U.S. 1221 (2006).

With respect to Applicant's specific due process claims as set forth above and identified as Claims Two, Three, Four, Five, and Six, I find the following.

### 1. Indefinite SHU Placement Prior to Disciplinary Hearing

Applicant asserts that prior to his disciplinary hearing he was placed in the SHU without a hearing and was held there indefinitely. (Aug. 17, 2006, Application at 3.) Applicant further asserts that while he was held in pre-hearing detention he was deprived of his liberty interest in segregation reviews. (Aug. 17, 2006, Application at Attachs.) Applicant contends that his placement in the SHU was retaliatory. (Aug. 17, 2006, Application at Attachs.)

In the Answer, Respondent asserts that Applicant was placed in administrative detention pending an investigation of his alleged violation of BOP regulations and that he was released from the detention on July 1, 2004. (Answer at 20.) Respondent further asserts that an initial record review was held in Applicant's case on January 10, 2004, three work days after he was placed in administrative detention, and that a seven-day review was conducted on January 16, 2004. (Answer at 21-22.) Respondent also asserts that periodic monthly reviews were conducted on February 6, 2004, March 4, 2004, April 1, 2004, April 29, 2004, May 27, 2004, and June 24, 2004. (Answer at 22.) Respondent has attached to the Answer a Declaration by Ms. Deborah A. Locke in which she attests to the records maintained in the ordinary course of business by the

BOP, including records regarding inmates' disciplinary history. (Answer at Ex. A.) Ms. Locke further attests that the SHU review documents are true and correct copies of the records for the reviews conducted while Applicant was housed in the SHU. (Answer at Ex. A.) Applicant has failed to reply and address both the evidence provided by Respondent and the Declaration given by Ms. Locke.

To the extent Applicant's SHU placement claim is properly before this Court in a § 2241 action, I find that he was extended the minimum process that he was due during the time he was placed in the SHU. **See Hewitt v. Helms**, 459 U.S. 460, 475-77 (1983) (in placing a prisoner in administrative segregation pending an investigation into misconduct prisoner should receive notice of the charges against him and an opportunity to present his views). Applicant received a notice of the detention placement on January 7, 2004, and a notice of the charges on January 8, 2004, giving a reason for the detention. (Answer, Ex. A, at Attach. 3, IR and at Attach. 4, Admin. Detention Order, and May 26, 2006, Application, Ex. W at 3.) He also had an opportunity to present his story, which he did when he gave a written statement to the investigator on February 24, 2004, and on several other occasions subsequent to February 24. (May 26, 2006, Application, Ex. W at 3-4.) Therefore, even if prison staff failed to provide him with weekly or monthly reviews, as set forth in 28 C.F.R. § 541.22, his constitutional and statutory rights were not violated.

There is, however, a liberty interest in avoiding particular conditions of confinement under **Sandin v. Conner**, 515 U.S. 472 (1995). An inmate enjoys a liberty interest under the Due Process Clause to be free from restraint that "imposes atypical

and significant hardship on the inmate in relation to the ordinary incidents of prison life."
***Sandin***, 515 U.S. at 484. In considering whether the BOP has imposed an atypical and significant hardship on Applicant, I consider the conditions of confinement, including both the duration and degree of restrictions as compared with other inmates. ***See Perkins v. Kan. Dep't of Corr.***, 165 F.3d 803, 809 (10th Cir. 1999).

Applicant was placed in the SHU on January 7, 2004, and released from the detention on July 1, 2004. (Answer, Ex. A at Attachs. 1 and 4.) An investigation was conducted by the FBI into the incident, which began on February 24, 2004, and concluded on April 8, 2004. (Answer, Ex. A at Attach 3, Investigation.) The UDC held a hearing on April 9, 2004, and the DHO held a hearing on April 15, 2004. (Answer, Ex. A at Attachs. 3 and 5.) After the DHO hearing, Applicant was sanctioned with a total 75 days of disciplinary segregation, 45 days of which was identified as time served. (Answer, Ex. A at Attach. 5.) I also note that Applicant was sanctioned to an additional 30 days of disciplinary segregation in a companion disciplinary proceeding involving the same incident. ***See Muhammad v. Wiley***, No. 06-cv-01128-WYD, Doc. No. 14, Answer at 12. The total time that Applicant was housed in the SHU prior to a disciplinary hearing was 98 days. Of the 98 days, 45 days of the time was credited by the DHO as time served. Contrary to Applicant's claim that his detention in the SHU was indefinite, his time was limited to 98 days and in part was considered time served against the sanction assessed against him in his disciplinary proceeding.

Applicant also does not assert any claim regarding the conditions of his confinement at the SHU other than that his placement was in retaliation for exercising

his constitutional rights. "[M]ere allegations of constitutional retaliation will not suffice; [applicants] must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." ***Frazier v. Dubois***, 922 F.2d 560, 562 n.1 (10th Cir. 1990); ***see Peterson v. Shanks***, 149 F.3d 1140, 1144 (10th Cir. 1998) (A plaintiff must demonstrate that " 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place."). Applicant's retaliation claims are vague and conclusory. He concedes he was placed in the SHU following the assault incident on January 7, 2008, and that an investigation was being conducted prior to his disciplinary hearing. I find no basis for Applicant's claim that a retaliatory motive by prison staff was the but for cause of Applicant's placement in the SHU.

Furthermore, certain BOP decisions might encroach on an inmate's constitutional rights but still may be valid if they are reasonably related to legitimate penological interests. ***See Frazier***, 922 F.2d at 562. It is not atypical for a prisoner to be placed in segregation while an investigation of an offense involving an assault on a prison officer is being conducted. ***See Jordan v. Federal Bureau of Prisons***, 191 Fed. Appx. 639, 653 (10th Cir. (Colo.) July 25, 2006) (unpublished op.). Applicant's placement in the SHU prior to his disciplinary proceeding did not violate his due process rights.

### 2. Claim Three/Waiving of Rights in UDC Hearing

In attachments to the May 26, 2006, original Application, Applicant included a copy of a "Copout," dated May 2, 2004, that he sent to Associate Warden Chester, and in which he asserts that he never waived his rights to have witnesses or to have staff represent him at his UDC hearing regarding the January 7, 2004, incident. (May 26,

2006, Application, Attachs., Ex. K at 1.)  Applicant also submitted, with the May 26, 2006, original Application, a copy of a Copout, dated April 26, 2006, that he sent to Warden Hood, and in which he asserts that the UDC hearing was held without his knowledge and that he did not appear at the hearing.  (May 26, 2006, Application, Attach., Ex. W. at 5.)  Applicant further asserts that the UDC Chairman, Ms. Sherry Beicker, deliberately waived all of his rights at the UDC hearing where the determination was made that the violations were serious and warranted consideration by the DHO. (May 26, 2006, Application, Attachs., Ex. K. at 1.)

Applicant claims that the first notice he received of the April 9, 2004, UDC hearing was on April 15, 2004, when a notice of the hearing, along with a copy of a response to a grievance he had filed regarding the untimeliness of the disciplinary proceeding, were left in his cell while he was at recreation. (May 26, 2006, Application, Attachs., Ex. P at 5.)  Applicant further states that copies of the IR of the offense in question in this action, a notice of his rights at a disciplinary hearing, and a notice that the disciplinary hearing would be scheduled on the next available docket also were left in his cell on April 15, 2004.  (May 26, 2006, Application, Attach., Ex. P at 5.)

In response to Applicant's allegations, Respondent argues that Applicant was present at the UDC hearing but declined to comment.  (Answer at 16.)  Respondent further claims that following the initial UDC hearing, where a determination to refer the charges to the DHO was made, Applicant was given a "Notice of Discipline Hearing Before the Discipline Hearing Officer" form and the "Inmate Rights at Discipline Hearing" form.  (Answer at 16.)  Respondent contends that Applicant refused to sign the forms.

(Answer at 16.) In support of these arguments, Respondent has provided a Declaration by Ms. Beicker in which she attests to the standard procedure followed when holding a UDC hearing. (Answer at Ex. B.) Ms. Beicker also attests to the procedure that she alleges was followed at Applicant's UDC hearing based on the prepared documents that are part of the SENTRY database, which contains data regarding an inmate's confinement including discipline history. (Answer at Ex. B.) Attached to the Declaration are copies of the documents to which Ms. Beicker refers.

Ms. Beicker asserts that on April 8, 2004, the investigating officer referred the IR to the UDC for further action. (Answer at Ex. B.) She further asserts that prior to holding a UDC hearing it is her standard practice to ask the inmate if he wants to appear at the UDC hearing and if he declines to note in § 17 of the IR that the inmate declined. (Answer at Ex. B.) She also asserts that the documentation reveals that Applicant appeared at the UDC hearing and made no comment. (Answer at Ex. B.)

Once a determination is made by the UDC that a DHO hearing is required, Ms. Beicker claims that she provides the inmate with a Notice of Discipline Hearing Before the Discipline Hearing Officer form and inquires whether the inmate desires staff representative and/or to call witnesses. (Answer at Ex. B.) Ms. Beicker further claims that at this time she also gives a copy of the Inmate Rights at Discipline Hearing form to the inmate and solicits his signature on both of the forms. (Answer at Ex. B.) If the inmate refuses to sign the forms Ms. Beicker claims that she notes the form "refused" under the signature portion of the form where inmates are to sign and acknowledge they received the forms. (Answer at Ex. B.) Because both forms are marked "refused"

-11-

under the signature portion of the form Ms. Beicker concludes that Applicant attended the UDC hearing. (Answer at Ex. B.) Ms. Beicker further claims that the forms otherwise would have indicated that the inmate declined to appear at the UDC hearing. (Answer at Ex. B.)

Upon review of the IR form that is attached to Respondent's Answer, I find that the members of the UDC did not enter a finding of guilt against Applicant but determined that due to the nature of the offenses the charges must be referred to the DHO for a further hearing. (Answer, Ex. B at Attach. 1, IR.) Also, the only finding by the UDC was to recommend what sanctions should be considered if the DHO found Applicant guilty of the offenses with which he was charged. (Answer, Ex. B at Attach. 1, IR.) I also find that Applicant has failed to reply to Respondent's Answer and counter the sworn statements provided by Ms. Beicker.

As stated above, to meet the minimum standards of due process under **Wolff** Applicant must be given a written notice of the charges against him twenty-four hours prior to the disciplinary hearing and be allowed the opportunity to call witnesses and present documentary evidentiary at the hearing. Although BOP P.S. 5270.07, Inmate Discipline and Special Housing Units, Chapter Six, provides for an initial hearing before the UDC, no final determinations were made at the UDC hearing regarding Applicant's guilt, and the UDC directed a further hearing to be held by the DHO. Even if Applicant did not attend the UDC hearing he did attend the DHO hearing. (May 2006, Application, Attachs, Ex. W at 5.)

Although Applicant claims he was not allowed to call witnesses at the DHO hearing, in his statement to the investigator of the January 7, 2004, incident, Applicant stated that he wanted to call as a witness the officer who was working in the control center during the incident. (Answer, Ex. B, Attach. 1, Investigation.) According to the DHO report, the hearing officer, who presided over the hearing and wrote the report, relied on a memorandum from G. Martinez. (Answer, Ex. A at Attach. 5 and May 26, 2006, Application, Attachs at Ex. O.) Ms. Martinez is the officer who was working in the control unit when the January 7, 2004, incident took place. (Judicial Notice of Case No. 06-cv-01128-WYD, Answer, Attach. 5 at 9.) In requesting to have a witness appear or testify at a disciplinary hearing, Applicant does not have a right to cross-examine the witness. ***Baxter v. Palmigiano***, 425 U.S. 308, 321 (1976). Any failure by prison officials to allow a witness to testify at a hearing is subject to harmless error review. ***See Grossman v. Bruce***, 447 F.3d 801, 805 (10th Cir. 2006). In that the officer working in the control unit on January 7, 2004, did provide a written statement to the DHO, and the DHO relied in part on the statement, Applicant's claim that he was denied the ability to call his witness is at best no more than a claim of harmless error.

Therefore, I find that even if Applicant did not attend the UDC hearing, as he claims he was not allowed to do, nothing under ***Wolff*** requires that Applicant be afforded any of the minimum due process requirements at the UDC hearing in light of the fact that no findings of guilt were a result of this hearing, and that he was afforded all the process he was due at his DHO hearing.

### 3. Claim Four/Denied Fair Chance to Prevail at Disciplinary Hearing

Applicant states on Page Three of Exhibit W, which is attached to the May 26, 2006, Application, that he received an IR on January 8, 2004, written by J. Castillo. Applicant also has attached a copy of the IR to the May 26, 2006, Application as Ex. B. The IR includes a description of the incident and includes the code number for each offense that Applicant is alleged to have committed.

Applicant was given a timely notice of the charges asserted against him. Based on the findings under Section Two, Applicant also was able to present a written statement to the DHO regarding the incident in question and to have a statement provided to the DHO from the witness he had identified in his acknowledgment to the IR on January 8, 2004. Applicant, therefore as stated above, was provided with all the process he is due. He does not have a right to prevail at a disciplinary hearing. He only has a right to the minimum due process procedures stated in ***Wolff***.

### 4. Claim Five/Some Evidence/Present Evidence/Call Witnesses

Applicant asserts that the DHO hearing decision was arbitrary and lacked the facts needed to support a finding of guilt. (Aug. 17, 2006, Application at Attachs.) In response to Applicant's claim, Respondent contends that Applicant denied the charges at the DHO hearing and provided a written statement. (Answer at 24.) Respondent further contends that Applicant waived his right to a staff representative and did not request to call witnesses. (Answer at 24.) Respondent also asserts that the DHO relied on the statement of the reporting staff member, the injury assessment, and supporting memorandums. (Answer at 24.) One of the memorandums relied on is from the officer

who was working in the control unit at the time the incident took place and is the officer Applicant sought to call as a witness. (Answer at Ex. A. Attach 5.) Upon review of the attached documents that include the statement by the reporting staff member, the injury assessment, and the memorandums, I find sufficient evidence to support the DHO's finding of guilt.

Applicant attached a copy of the written statement that he alleges he gave to the DHO. (May 26, 2006, Application, Attachs, Ex. P.) In the statement, Applicant asserts that he was the victim, not the reporting staff member, and that the reporting staff member used unnecessary force against him on January 7, 2008, when he placed the handcuffs on him. Applicant further asserts that he was unprepared to provide a written statement. Although Applicant asserts he was unprepared to provide a written statement to the DHO, I find that Applicant gave a written statement to the investigator on February 24, 2004, and the investigator indicated in the investigation section of the IR that he had attached Applicant's written statement to the report. (Answer, Ex. A at Attach. 3, Investigation.) Furthermore, the DHO indicates in the DHO report that he relied on documentary evidence that included the IR and the Investigation. (Answer, Ex. A, Attach. 5 at 2.)

Nonetheless, nothing that Applicant has attached to the May 26, 2008, original Application indicates that the DHO lacked "some" evidence to find that Applicant was guilty of assaulting a prison officer. Applicant's claims are no more than self-serving statements and are not supported by any corroborating evidence. I find, therefore, that

the DHO's decision in the disciplinary hearing at issue in this case is supported by some evidence.

### 5. Claim Six/Liberty Interest in Good-Conduct Time

To the extent Applicant has a liberty interest in his good-conduct time, he was not denied due process in the disciplinary proceeding, in IR No. 1178680, that resulted in the loss of the time. The disciplinary actions were justified.

### III. Conclusion

Based on the above findings, Applicant fails to assert a denial of his due process rights in his disciplinary proceeding or in his placement in the SHU prior to his disciplinary proceeding. I, therefore, find that Applicant's claims lack merit. The action will be dismissed with prejudice on the merits. Accordingly, it is

ORDERED that the original Application, filed May 26, 2006, and the Second Amended Application, filed August 17, 2006, are **DENIED** and the action is **DISMISSED WITH PREJUDICE**. It is

FURTHER ORDERED that each party shall bear his own costs and attorney's fees.

Dated: August 25, 2008

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge